IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EMMA BARCENAS, et al. )
)
Plaintiffs, )
) Case No. 07 C 5390
)
v. ) Magistrate Judge Arlander Keys
)
)
MOLON MOTOR & COIL )
CORP., )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

On July 21, 2006, Molon Motor & Coil Corp. ("Molon") terminated Plaintiffs from their positions at Molon's factory in Rolling Meadows, Illinois. At the time, Plaintiffs were all over the age of 40. After pursuing the required administrative remedies, Plaintiffs sued Molon, claiming that it terminated them because of their age, in violation of the Age Discrimination in Employment Act. 29 U.S.C. § 621, et seq. (West 2010). Molon denies that age had anything to do with the decision to terminate Plaintiffs, explaining that the terminations were the result of a necessary reduction in force. The case is currently before the Court on Molon's Motion for Summary Judgment, which, for the reasons explained herein, is Denied.

## Factual Background & Procedural History

Molon is an Illinois corporation that manufactures subfractional horsepower motors and gear motors. In 2006, Earle Moloney was the President of Molon, Robert Clancy was Vice President and Controller, Barbara Jackson was the Director of Manufacturing, and Robert Litkea was a factory supervisor. Defs.' Rule 56 Stmnt at ¶¶ 19-20; 26-27. Both Barbara Jackson and Robert Litkea reported to Charles George. *Id.* at ¶ 27.

In July of 2006, Robert Clancy directed Charles George to reduce the work force at the Rolling Meadows factory, suggesting that people with the least amount of versatility be terminated. Charles George Dep at pp. 8-9. Mr. George then instructed Barbara Jackson and Robert Litkea to prepare and submit a list of 10 factory employees to be terminated in a factory-wide layoff; they did so and Mr. George subsequently submitted the list to Robert Clancy. Ex. B pp. 1, 11, 18. Although Defendants now contend that the supervisors considered the employees' length of service, time in the current position, adaptability and willingness to perform in more than one job function in compiling the list, Ms. Jackson testified at her deposition that the only considerations she and Robert Litkea took into account were seniority and not wanting to lay off members of the same family. Barbara Jackson Dep., Exhibit EE, at pp. 131 and 133.

2

The supervisors delivered the list to Robert Clancy, who accepted it without any comment or discussion. Defs. Rule 56 Stmnt at ¶36. Mr. Clancy subsequently[1] prepared a Payroll Cost analysis showing the savings to be realized by laying off the full-time workers and substituting temporary workers provided by All Work Inc. *Id.* At ¶ 37. On July 21, 2006, Molon terminated nine workers: Emma Barcenas, Juana Rueda, Tiburcio Carbajal, Gonzolex Martinez, Juana Barcenas, Maria Colon, Petra Pacheco, Adolfina Gamez, and Francisca Peralta. Since terminating these full-time employees, Molon has utilized a shifting number of temporary workers, provided by All Work, Inc., depending upon the amount of work available. Defs. Rule 56 Statement at ¶ 37.

In the weeks following their termination, the Plaintiffs each filed charges of discrimination with the Illinois Department of Human Rights ("IDHR"), which were simultaneously cross-filed with the Equal Employment Opportunity Commission ("EEOC"). *See* Pls. Compl ¶¶ 11-17. Mr. George of Molon completed and signed Defendant's Responses to the Charges of Discrimination, attesting that the answers were true to the best of his knowledge. Pls. Rule 56 Statement of Fact at ¶3. In the Response he prepared on Molon's behalf, Mr. George denied that the Plaintiffs' work performance was satisfactory, that they had good employment

---

[1] The evidence is conflicting as to whether Mr. Clancy performed this analysis before or after the lay-offs.

3

records, and that they were otherwise meeting Defendant's work expectations. *Id.* At ¶ 4. At his deposition, however, Mr. George explained that these purported performance deficiencies would not have been the basis for the decision to terminate the Plaintiffs. Mr. George explained that these employees were not "discharged" but rather that the employees were "let go" because the company needed to cut costs.

Similarly, in providing a Position Statement to the IDHR, Barbara Jackson delineated the Plaintiffs' various performance deficiencies in explaining why she selected them for the lay off. For example, Ms. Jackson noted that Mr. Martinez could not set up work equipment, nor adjust or maintain the set-ups, and that he frequently exhibited an uncooperative attitude. Pls. Rule 56 Stmnt., Ex. I. She noted that Mr. Cabajal's work was generally satisfactory, but that he frequently exhibited an uncooperative attitude when assigned to work outside his area. *Id.* at Ex. J. Ms. Jackson noted that Ms. Rueda was "the second lowest seniority person employed at Molon." *Id.* at Ex. K. Ms. Jackson stated that Ms. Colon had demonstrated difficulty in keeping pace with other operators in a line environment, and would slow down the operation. *Id.* at Ex. L. Ms. Jackson noted that Emma Barcenas had requested a restricted work assignment, *Id.* at Ex. M, and that the assignments that Juana Barcenas "was able to perform satisfactorily were very limited." *Id.* at Ex. N.

Notably, the Plaintiffs' employee performance evaluations[2], which were created just weeks before the reduction in force took place, made no mention of the deficiencies highlighted by Ms. Jackson. Similarly, the evaluations appear to contradict statements made by Mr. George in response to Plaintiffs' IDHR charges. While Mr. George denied that Plaintiffs were performing their jobs satisfactorily, that they had good employment records, and that they were otherwise meeting Defendant's work expectations, not one of the Plaintiffs received a score below "Meets Expectations" in the performance evaluations completed in June of 2006. *See* Pls. Rule 56 Statement, Ex. O-S.[3]

The EEOC issued Plaintiffs Right to Sue Letters on June 25, 2007. On September 24, 2007, seven[4] of the employees whom Molon had terminated weeks earlier-- including Emma Barcenas, Juana Rueda, Tiburcio Carbajal, Gonzolez Martinez, Juana Barcenas, and

---

[2] Plaintiffs have submitted performance evaluations, prepared in June of 2006, for only the following employees; Martinez Gonzalo, Pls. Rule 56 St. Ex. O, Tiburcio Carbajal, Pls. Rule 56 Ex. P, Maria Colon, Pls. Rule 56 Ex. Q, Emma Barcenas, Pls. Rule 56 Ex. R, and Juana Barcenas, Pls. Rule 56 Ex. S.

[3] Plaintiffs have not submitted an evaluation for Juana Rueda. Perhaps this was because Ms. Jackson mentioned only her lack of seniority, and not a performance deficiency, in the Position Statement she prepared on behalf of Molon.

[4] Francisca Peralta filed suit along with the above listed Plaintiffs, but on December 5, 2008, this Court dismissed her as a plaintiff from this action for want of prosecution. Petra Pacheco and Adolfina Gamez were also terminated in Molon's RIF, but did not file suit against their former employer.

Maria Colon-- filed the present suit in the Northern District of Illinois. In addition to their charges of age discrimination, Plaintiffs' Complaint detailed their length of service with Molon, as well as their ages. *See* Pls.' Comp. ¶¶ 2-8, 21-27. Plaintiff Emma Barcenas began working for Molon in April of 1979. At the time of her termination Ms. Barcenas was 67 years old, and was working as a Final Tester/Inspector. Plaintiff, Juana Rueda was 66 years of age in July of 2006, and had been working as an Assembler. Plaintiff Tiburcio Carbajal had been working for Molon for over twenty five years as an Operator. He was 61 when he was terminated. Plaintiff Gonzolez Martinez worked for Molon for 18 years as a grinder; he was 59 at the time of his termination. Plaintiff Juana Barcenas began working for Molon in 1977, and was a 63 year old assembler when he was terminated. Finally, Plaintiff Maria Colon was 67 years old when she was terminated from her position as an Assembler, after having worked for Molon for more than 26 years.

## STANDARDS

Summary judgment will be granted where the pleadings and supporting documents show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P 56©; *Lewis v. City of Chicago et al*, 496 F.3d 645, 650 (7th Cir. 2007). Whether a fact

is material to the dispute is established by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue as to one of these material facts exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

At this juncture, it is not the role of the Court to make "credibility determinations nor choose between competing inferences." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993); *See also Paz v. Wauconda Healthcare and Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006). However, in determining whether a genuine issue of material fact exists, the Court will view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

The moving party initially bears the burden of showing that no genuine issue of material fact exists in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1985). If the moving party meets its burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial, and the non-moving party "may not rest upon the mere allegations or denials . . . ." *Anderson*, 477 U.S. at 257.

The Court will disregard all facts not properly supported by the record. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233

F.3d 524, 529 (7th Cir.2000)(the Court will "limit its analysis of the facts . . . to evidence that is properly identified and supported in the parties' [Rule 56 Statements of Fact.]") Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (" Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite to specific concrete facts establishing the existence of the truth of the matter asserted.")

## DISCUSSION

Plaintiffs have sued Molon for age discrimination under the Age Discrimination in Employment Act, which makes it unlawful for an employer to fire any employee who is 40 years old or older "because of such individual's age." 29 U.S.C. §623(a)(1). Plaintiffs may establish discrimination in violation of the ADEA either by putting forth direct evidence of discrimination or by following the indirect method spelled out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

8

Plaintiffs have not proffered any direct evidence of age discrimination. As such, they must proceed under the indirect method outlined in *McDonnell Douglas*. To make out a *prima facie* case of discrimination in the termination context, Plaintiffs must show that: (1) they are members of a protected class; (2) they performed their jobs to Molon's expectations; (3) they were discharged; and (4) that similarly-situated individuals outside the protected class were treated more favorably[5]. *Berger v. The Art Institute of Chicago*, 2009 WL 3462495, at *9 (citing *Jennings v. Illinois Department of Corrections*, 496 F.3d 764, 767 (7th Cir. 2007); *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845-46 (7th Cir. 2007)). Plaintiffs must provide sufficient evidence that establishes, by a preponderance of the evidence, each element of a *prima facie* case. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

If Plaintiffs make out their *prima facie* case of discrimination, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision."

---

[5] In a reduction in force case, the Seventh Circuit has offered several paths for plaintiffs to establish the fourth prong, including demonstrating that similarly situated individuals outside the protected class fared better or, in the mini-RIF situation, that the plaintiff's job duties were absorbed by employees who were not members of her protected class. See *Hemsworth v. Quotesmith Com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007); *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690, n.1 (7th Cir. 2006); *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

9

*Berger*, 2009 WL 3462495, at *9 (quoting *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 724 (7th Cir. 2005)). "If the employer does articulate such a reason, then 'the plaintiff must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination.'" *Id.* "Throughout this burden-shifting, the ultimate burden of persuasion remains at all times with the plaintiff." *Rudin*, 420 F.3d at 724 (citing *Moser v. Indiana Department of Corrections*, 406 F.3d 895, 901 (7th Cir. 2005)).

Significantly, an employee in a reduction in force ("RIF") case bears no greater burden of proof with respect to demonstrating pretext than any other ADEA plaintiff. *See Oxman v. WLS-TV*, 12 F.3d 652, 657 (7th Cir. 1993). Defendant's argument to the contrary, replete with citation to authority[6] that has been long overruled, is not well received by the Court.

Molon concedes that the Plaintiffs have established the first three elements of their prima facie case. The evidence confirms that the Plaintiffs were each over 40 years of age and, therefore, within the protected class. Their terminations clearly constitute adverse job actions. And finally, Defendant

---

[6] *Aungst v. Westinghouse Electric Corporation*, 937 F.2d 1216, 1223 (7th Cir. 1991), cited by Defendant in its Reply brief, has been overruled on this very point for more than 16 years. Citations to caselaw disavowing a higher burden for RIF plaintiffs abound, See, e.g., *Robinson v. PPG Indus.*, 23 F.3d 1159, 1163 (7th Cir. 1994).

concedes that Plaintiffs were meeting Molon's performance expectations.

Defendant does dispute Plaintiffs' ability to establish that similarly situated employees outside of the protected class were treated more favorably. Molon noted that, of the 67 people employed in Plaintiffs' position, 55 were over the age of 40. In so noting, however, Molon concedes that not one of the 12 individuals under the age of 40 was terminated. Molon has not suggested that these 12 employees were not similarly situated to Plaintiffs; to the contrary, Molon has identified them as being employed in Plaintiffs' position and has emphasized its desire that its factory employees have fungible skills. Drawing all inferences in Plaintiffs' favor[7], the Court concludes that similarly situated individuals outside the protected class were

---

[7] In addition, Molon failed to produce complete evidence in response to Plaintiffs' Request to Admit and Produce which would indicate the ages of the temporary employees hired to replace Plaintiffs. ("it should be enough that there is evidence that a party would surely have introduced had it been helpful, permitting an inference that the evidence would instead have helped his opponent.") It claimed that All Work was responsible for maintaining such paperwork and that All Work was unable to locate all of the necessary documents. Plaintiffs argue that the Court should, therefore, infer that the evidence would have been helpful to Plaintiffs' position if it had been produced, citing to a discussion of state versus federal standards for giving a missing evidence jury instruction, *Miksis v. Hoard,* 106 F.3d 754, 763 (7th Cir. 1997), which has little application here. In any event, Molon's Reply brief abandons its challenge to Plaintiffs' ability to satisfy Plaintiffs' prima facie case, and argues only that its reason for terminating Plaintiffs was not pretextual

treated more favorably than Plaintiffs. *See Williams v. United Technologies Carrier Corp.*, 310 F. Supp.2d 1002, 1013 (S.D. Ind. 2004) (finding that the plaintiff had satisfied the fourth prong of his prima facie case where "at least some of [the plaintiff's] duties were absorbed by non-African- American employees.")

The final issue before the Court is whether Molon's proferred reason for terminating these specific Plaintiffs- that a drop-off in business necessitated a reduction in force at the Rolling Meadows facility-- was a mere pretext for age discrimination. Plaintiffs argue that they have established that Molon's stated reason for their termination is pretextual, because: 1) the cost of employing the temporary workers from All Work exceeded the amount it would have cost Molon to retain Plaintiffs; and 2) Defendant's shifting explanations as to how it selected these Plaintiffs for termination permit the inference that discrimination was the real reason they were fired. The Court will address each argument in turn.

Plaintiffs argue that the fact that Molon spent more money on temporary employees ("Temps") after the RIF than it would have cost Molon to retain Plaintiffs raises an inference that its proffered reason for terminating Plaintiffs is pretextual. Plaintiffs note that, in the week after Plaintiffs were terminated, Defendant spent $6,744.50 on 34 Temps from All Work at its Rolling Meadows factory. Pls' Rule 56 Stmnt at ¶ 34.

Molon spent $7,888 on 25 All-Work Temps the following week, and $8,521.25 on 34 Temps the week after that. *Id.* Molon's expenditure for Temps steadily increased, and by the week ending on September 17, 2006, Molon spent $16,657.90 on Temps. Plaintiffs contend that there were only 5 non-holiday weeks between September 3, 2006 and July 29, 2007 where Defendant spent less than $10,000 on Temps.

In comparison, Plaintiffs note that the cost to employ all of the Plaintiffs and the three other terminated employees was only $3,930.40[8] per week. During the week in which Plaintiffs were terminated, Defendant had employed only 15 Temps from All-Work, at a cost of $3,931.25. As such, Molon's cost to employ Plaintiffs and the Temps it hired the week before terminating Plaintiffs was only $7,861.65-- significantly less than the amount Molon ended up spending after it terminated Plaintiffs.

Plaintiffs' position, even if it accurately represents Defendant's employment costs[9], simply demonstrates that Molon may

---

[8] Plaintiffs arrived at the cost for employing Plaintiffs by calculating their respective hourly pay rate, vacation pay hours, Christmas bonus and various tax liability, insurance premiums and Medicare, divided by their annual standard hours. Plfs' Rule 56 Stmnt. at ¶ 33.

[9] Plaintiffs have not directed the Court to evidence indicating how many Temps Molon utilized in the weeks and months leading up to the termination. Although Molon spent more on Temps after it terminated Plaintiffs than it spent in employing Plaintiffs and 15 Temps in the one week prior to Plaintiffs' termination, one week is not a firm indicator of Molon's typical workforce costs.

have exercised bad business judgment. But the issue before the Court in evaluating whether the decision to terminate Plaintiffs was pretextual is whether Molon's explanation is honest, not whether the decision to reduce its headcount was wise. "Courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Brummett v. Sinclair Broadcast Group, Inc.* 414 F.3d 686, 692 (7th Cir. 2005). Molon's decision to implement a reduction in force can be "foolish or trivial or even baseless" so long as Molon "honestly believed" that it needed to take such measures. Culver v. Gorman & Co., 416 F.3d 540, 547 (7th Cir. 2005); see also *Ajayi v. Aramark Bus. Servs. Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Defendant has come forward with evidence indicating that, in the weeks and months before terminating Plaintiffs, Molon had been experiencing a serious decline in business that necessitated shutting down lines and moving factory employees to substitute duties in order to provide work for them. Def's Rule 56 Stmt at ¶ 28. Plaintiffs have not come forward with evidence casting doubt upon the fact that Molon's business was declining in the spring and summer of 2006. Absent more, the fact that Molon may have erred in determining whether it needed to reduce its workforce is simply not indicative of discrimination. *Vanasco v. National-Louis University*, 137 F.3d 962, 967 (7th Cir. 1998) ("this court has repeatedly stressed that employment

discrimination laws are not merit selection programs; nor do they mandate that employers follow reasoned and fair decisional processes.")

Plaintiffs' second argument is a bit more persuasive. Plaintiffs argue that Defendant has offered shifting and sometimes contradictory reasons for how and why it selected these Plaintiffs for termination. "Even if the reduction was otherwise bona fide, [Plaintiffs] may show pretext by demonstrating that the specific reasons given for including [them] in the reduction were pretextual." *Paluck v. Gooding Rubber co.*, 221 F.3d 1003, 1012-13 (7th Cir. 2000). Plaintiffs argue that Molon's shifting positions and "dishonesties" allow the inference that age was the real reason they were selected for the RIF. Plaintiffs point to the discrepancies between Ms. Jackson's statements in her Position Statement about Plaintiffs' purported performance deficiencies and their actual performance review evaluations. In addition, Plaintiffs note that, although Ms. Jackson claimed that the only factors she considered in selecting Plaintiffs for the reduction in force were seniority and not wanting to lay off members of the same family, the evidence indicates that there were as many as 16 people with less seniority than the least senior Plaintiff, Juana Rueda[10].

---

[10] The Court is not able to discern from the evidence provided the family members of these 16 people.

Also confusing is Mr. George's initial denial to IDHR that Plaintiffs' work performance was satisfactory, that they had good employment records, and that Plaintiffs were otherwise meeting Molon's expectations. As noted above, Mr. George's statements are contradicted by Plaintiffs' work performance evaluations, completed just weeks before their terminations. Although Mr. George attempted to distance himself from these remarks at his deposition, by explaining that the Plaintiffs' performance was not the basis for their terminations, he failed to explain why he disparaged the Plaintiffs' performance to the IDHR.

After reviewing the evidence, the Court agrees that Plaintiffs have highlighted inconsistencies between the Defendant's proffered reasons for selecting Plaintiffs for the reduction in force. Notably, Defendant has made no effort to explain or resolve these inconsistencies in replying to Plaintiffs' argument.

When an employer offers differing explanations regarding why it took an adverse employment action, and when a plaintiff presents evidence that enable a jury to disbelieve those reasons, a jury may reasonably infer that the employer is "hiding something-that is, that the true explanation is unlawful discrimination." *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1024 (8th Cir.1998); *see also Simple v. Walgreen Co.*, 511 F.3d 668, 671 (7th Cir. 2007) ("The inconsistency is suggestive

16

of pretext and thus is evidence of discrimination."); *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir.1995) ("Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment.") However, not every contradiction is circumstantial evidence of discrimination. *See, e.g., Hall v. Forest River, Inc.*, 536 F..3d 615, 623 (7th Cir.2008) (rejecting as circumstantial evidence of retaliation discrepancies by the employer regarding the date of an employee's promotion). The following cases are illustrative.

In *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 677 (7th Cir. 2003), the defendant employer gave two entirely different reasons for not rehiring the plaintiff. Initially, the employer stated that it did not rehire the plaintiff because of the company's blanket no-rehire policy. The company later contradicted itself by claiming that it did not rehire the plaintiff because its hiring was limited to union members. *Id.* In that case, the court agreed that the discrepancy between the employer's conflicting explanations was indicative of pretext.

In *Mudron v. Brown & Brown, Inc.*, 2005 WL 3019414 (N.D. Ill. Nov. 8, 2005), the court found *Zaccagnini* to be distinguishable, because the employer's statements were not materially inconsistent. The plaintiff had simply alleged that his employer did not use the exact same words every time it explained its

17

reasons for his termination. The court disagreed that the employer's statement that it terminated plaintiff for "poor performance" was inconsistent with its statement that it terminated the plaintiff because he refused to perform his job duties. Instead, the court determined that each of these statements was simply a more or less specific reason for firing plaintiff; they were not incompatible or inconsistent.

The instant case falls somewhere between *Zaccagnini* and *Mudron,* and drawing every inference in Plaintiffs' favor, the Court agrees that Molon's shifting explanations for the reasons it selected these specific Plaintiffs for termination casts doubt upon the veracity of each explanation. *Culver v. Gorman,* 416 F.3d 540, 549 (7th Cir. 2005) ("An inconsistent employer explanation may help to support a finding of pretext."); *Schuster v. Lucent Techs., Inc.,* 327 F.3d 569, 577 (7th Cir. 2003) ("Shifting and inconsistent explanations can provide a basis for a finding of pretext.") While some of Defendant's inconsistent statements are innocuous- such as the somewhat differing factors that Ms. Jackson and Mr. George claim they relied upon in determining whom to terminate- other discrepancies are harder to explain. For example, Defendant makes no effort to explain why less senior employees were retained if, in fact, seniority was one of the factors considered for termination. Also troubling is Mr. George's representation to the IDHR that

18

the Plaintiffs' performance was wanting, when Molon had just completed a review process that contradicted such statements. Similarly, if Molon wanted to protect family breadwinners, Molon does not explain why Plaintiff Martinez- who appears to fit within the definition- was terminated. Perhaps these inconsistencies can be explained, but Defendant has made no effort to do so in its Reply brief and the matter is better resolved by a jury. As such, the Court concludes that Plaintiffs have raised, just barely, a sufficient inference of pretext, precluding the entry of summary judgment.

## Conclusion

For the reasons explained above, the Court finds that Plaintiffs have raised an inference that Molon's stated reason for terminating them - namely, a reduction in force - was a pretext for age discrimination. Accordingly, the Court finds that summary judgment in Molon's favor is inappropriate. Molon's motion for summary judgment [#48] is Denied.

Date: March 25, 2010        ENTER:

ARLANDER KEYS
United States Magistrate Judge